IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(at Baltimore)

| | | |
|---|---|---|
| Mark H. Wittstadt | * | |
| 1122 Kenilworth Drive, Suite 501 | * | |
| Towson, Maryland 21204 | * | |
| | * | |
| Gerard Wm. Wittstadt, Jr. | * | |
| 1122 Kenilworth Drive, Suite 501 | * | |
| Towson, Maryland 21204 | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| vs. | * | |
| | * | |
| Robert H. Hosch, Jr. | * | |
| 7634 Fisher Road | * | |
| Dallas, Texas 75214 | * | |
| | * | |
| | * | |
| Butler & Hosch, P.A. | * | |
| 3185 S. Conway Road | * | Civil Case No. : _____ |
| Orlando, Florida 32812 | * | |
| | * | |
| Serve on Resident Agent: | * | |
| The Corporation Trust, Inc. | * | |
| 351 W. Camden Street | * | |
| Baltimore, Maryland 21201 | * | |
| | * | |
| H. Edward Bickers, Jr. | * | |
| 7634 Fisher Road | * | |
| Dallas, Texas 75214 | * | |
| | * | |
| Default Consulting Group, Inc. | * | |
| 3185 S. Conway Road | * | |
| Orlando, Florida 32812 | * | |
| | * | |
| Serve on Resident Agent | * | |
| The Corporation Trust, Inc. | * | |
| 351 W. Camden Street | * | |
| Baltimore, Maryland 21201 | * | |
| | * | |
| Defendants. | * | |

*      *      *      *      *      *      *      *      *      *      *      *

## **COMPLAINT**

Plaintiffs Mark H. Wittstadt, Esquire ("M. Wittstadt") and Gerard Wm. Wittstadt, Jr., Esquire ("G. Wittstadt," and with M. Wittstadt, "Plaintiffs" or the "Wittstadts"), by their undersigned attorneys, hereby file this Complaint against defendants Robert H. Hosch, Jr. ("Hosch"); Butler & Hosch, P.A. ("B&H"); H. Edward Bickers, Jr. ("Bickers"); and Default Consulting Group, Inc. ("DCG," and with Hosch, B&H, and Bickers, "Defendants"), and in support hereof allege as follows:

### PARTIES

1.     M. Wittstadt, Esquire is an individual, who resides in and maintains a principal place of business in Baltimore County, Maryland.

2.     G. Wittstadt is an individual, who resides in and maintains a principal place of business in Baltimore County, Maryland.

3.     Hosch is an individual, who resides in Dallas, Texas and who, at all times relevant herein, directly or by his agents, regularly conducted business in Baltimore County, Maryland at all times relevant herein.

4.     B&H is a professional association organized under the laws of the State of Florida, registered to do business in the State of Maryland, and at all relevant times herein, had principal offices at 9409 Philadelphia Road, Rosedale, Maryland 21237.

5.     Bickers is an individual, who resides in Dallas, Texas and who, at all times relevant herein, directly or by his agents, regularly conducted business in Baltimore County, Maryland.

6.     DCG is a professional association organized under the laws of the State of Florida, registered to do business in the State of Maryland, and at all relevant times herein, had principal offices at 9409 Philadelphia Road, Rosedale, Maryland 21237.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between plaintiffs and defendants, and the amount in controversy exceeds $75,000.00.

8.      Venue is appropriate in the Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the district and because the employment agreements between the parties specifically set forth that the governing law of the agreement shall be governed and construed in accordance with the laws of the State of Maryland.

9.      There is complete diversity between Plaintiffs and each of the Defendants, as Plaintiffs are citizens and residents of the State of Maryland, and each of the Defendants is a resident of, or located in, either the State of Texas or the State of Florida.

## FACTS COMMON TO ALL COUNTS

10.     M. Wittstadt is an attorney in good standing, licensed to practice law in the State of Maryland, the State of West Virginia, and the District of Columbia.

11.     G. Wittstadt is an attorney in good standing, licensed to practice law in the State of Maryland, the State of West Virginia, and the District of Columbia.

12.     At all times relevant herein, Hosch was an attorney licensed to practice law in the State of Florida[1] and was the Managing Partner of B&H.

13.     At all times relevant herein, Hosch was an officer of DCG.

14.     At all times relevant herein B&H was operating as a law firm.

15.     At all times relevant herein Bickers was the President of DCG.

---

[1] Upon information and belief, Hosch recently resigned from the Florida Bar.

16.    At all times relevant herein defendant DCG operated the back office support mechanism for B&H, including but not limited to the payment of wages of B&H's employees.

17.    At all times relevant herein defendants Hosch and Bickers were legally married to each other and were otherwise partners in the operation of both B&H and DCG.

18.    At all times relevant herein defendant Bickers, on behalf of DCG, and Hosch, on behalf of B&H, acted together and in conjunction with each other with actual knowledge and acquiescence in the various statements and actions that Hosch made and took with regard to the Wittstadts.

19.    Prior to February 1, 2015[2], the Wittstadts were employees of the law firm of Morris Schneider Wittstadt, LLC ("MSW").

20.    MSW was a nationally recognized law firm with offices in a number of states, including without limitation, Maryland. The firm concentrated in primarily two arenas, representing financial institutions in prosecuting residential foreclosures and related legal matters, and conducting residential real estate closings. Prior to August 2014, the Wittstadts were responsible for the foreclosure practice at MSW and their partner at the firm, Nathan E. Hardwick, IV, was responsible for the real estate closing practice at MSW. The Wittstadts controlled a book of business that generated fees in excess of forty million dollars ($40,000,000.00) per year. The profit from those that book of business exceeded five million dollars ($5,000,000.00) per year, of which the Wittstadts were collectively entitled to a majority share.

21.    In August 2014, MSW discovered serious accounting issues related to the closing practice at MSW. Funds were missing from firm escrow accounts, and the subsequent investigation revealed that Mr. Hardwick was responsible for the defalcation.

---

[2] As detailed in the Complaint, M. Wittstadt was hired by B&H on about February 1, 2015 and began collecting his salary in the form of wages from DCG.

22.     Mr. Hardwick resigned his position with the firm on August 18, 2014, leaving M. Wittstadt as the Executive Managing Partner of MSW.

23.     MSW was able to enter into a business arrangement with Fidelity National Financial to cover the funds subject to the defalcation, but in the aftermath of the discovery of the defalcations, lawsuits were filed against MSW in connection with certain "loans" to which Mr. Hardwick had purported to bind MSW in an attempt to return monies that he received personally. The allegations contained in one particular suit brought against MSW proved to be more than MSW could bear.

24.     In mid-November 2014, certain (although not all) of the firm's major clients advised that because of the allegations made in one of the lawsuits against the Wittstadts personally, they would be terminating the agreements with MSW and terminating their relationship. They stipulated, however, that if the Wittstadts were able to find a new firm to which the Wittstadts could port their foreclosure practice by the end of the year 2014, the clients would agree to allow that new firm to take on the clients' work.

25.     Faced with this new challenge, the Wittstadts began speaking with a number of firms that had foreclosure and related creditor default practice areas.

26.     A number of firms expressed interest in acquiring the Wittstadts' foreclosure practice because of its vast geographical footprint (Maryland, Virginia, West Virginia, District of Columbia, Delaware, Ohio, Indiana, Tennessee, Georgia, Alabama, and Florida).

27.     At the time, the Wittstadts were in Baltimore County, Maryland.

28.     The Wittstadts were in serious discussions with a firm based in New York when M. Wittstadt was approached in late December 2014 by the so-called "Senior Partner" of B&H, Hosch.

29.     B&H, through its senior counsel Hosch, expressed an interest in the Wittstadts' practice areas.

30.     Throughout these discussions, B&H through its senior counsel Hosch made assurances, representations and warranties to the Wittstadts that B&H was financially secure and otherwise able to undertake a transaction of this size and complexity.

31.     B&H, through Hosch, made other assurances, representations and warranties concerning DCG, which included (but was not limited to) that DCG was the "back office" of B&H and was responsible for payroll, benefits, human resources and information technology support and the like, and further that Hosch had full authority to bind DCG.

32.     These discussions specifically included Hosch's intention that B&H would purchase the default assets of MSW (FFE), would employ the Wittstadts in Baltimore County, Maryland, and would give the Wittstadts written employment agreements

33.     In exchange for these promises, Hosch and the Wittstadts expressed their intention that the Wittstadts would port their book of foreclosure business to B&H.

34.     These discussions created a special relationship between Hosch, Bickers, B&H, and DCG on one hand and the Wittstadts on the other hand.

35.     The Wittstadts relied upon and had a right to rely upon those assurances representations and warranties.

36.     In early January 2015, B&H through its senior counsel defendant Hosch caused to be sent to MSW and the Wittstadts at their offices in Baltimore County, Maryland and presented to MSW and the Wittstadts a Letter of Intent.

37.     The Letter of Intent was signed on January 6, 2015 by Hosch as "senior counsel" on behalf of defendant B&H and countersigned by Mark Wittstadt on behalf of MSW in Baltimore County, Maryland.

6

38.     In mid-January 2015, B&H through its senior counsel defendant Hosch presented the Wittstadts at their office in Baltimore County, Maryland with proposed employment agreements. Each proposed employment agreement had an effective date of January 15, 2015 and was contingent on the closing in accordance with a certain Asset Purchase Agreement dated January 28, 2015 between MSW and B&H.

39.     M. Wittstadt was to be employed by defendant B&H as "Executive Managing Attorney" And G. Wittstadt was to be employed as "General Counsel" under the proposed employment agreements.

40.     The term of each proposed employment agreement was five (5) years with an annual salary of $417,000.00, plus bonuses and other benefits.

41.     On January 28, 2015, B&H and MSW entered into an Asset Purchase Agreement ("APA"), whereby B&H essentially purchased MSW's furniture fixtures and equipment as well as the work in progress associated with the Wittstadts' book of business.

42.     Based upon the assurances, representations and warranties made by the Defendants prior to and immediately after the execution of the APA and the employment agreements, the Wittstadts contacted their clients and advised them of the proposed transactions to obtain their agreement that their legal matters would be transferred to B&H when the Wittstadts took employment with B&H. Nearly one hundred present of the clients agreed with the transaction.

43.     From about February 1, 2015 through April 24, 2015, DCG paid the Wittstadts the wages owed by B&H under their respective employment agreements.

44.     Around March 15, 2015 the Wittstadts began to question Hosch as to the financial stability of the firm as it was brought to their attention that certain vendors had not been paid and there was increasing difficulty advancing funds to meet client requirements.

45.     The Wittstadts were told in response to their inquiry that money was tight, but the viability of the firm and companies was strong. Based upon these continued assurances, representations and warranties made by Hosch on behalf of all Defendants, the Wittstadts continued to transition their clients to B&H and did not explore other employment opportunities.

46.     On May 14, 2015, starting at 12:03 PM, the Wittstadts attended a conference call[3], directed by attorney, Roy Kobert with Grey-Robinson in Orlando, who indicated to the attendees that he was representing B&H and its related entities, specifically including but not limited to defendant DCG. Mr. Kobert presented "Plan A" and "Plan B." Plan A included the "unlikely" event that there would be an "infusion of capital" into the firm. Plan B was the filing of an Assignment for the Benefit of Creditors proceeding in the Florida State Court on defendant B&H's behalf.

47.     During the call, in an attempt to explain why B&H was in financial distress, Mr. Kobert stated that "B&H grew too fast and did not have the cash reserves to fund it."

48.     Later that afternoon on a call to which all B&H employees were invited, Mr. Kobert announced that B&H would not open for business the next day and that Hosch had executed the appropriate documents to initiate the filing of an Assignment for the Benefit of Creditors ("ABC") in a Florida state court in connection with B&H.

49.     At 7:51 PM on May 14, 2015, B&H through its senior counsel Hosch sent an email to the employees of B&H stating that he had stepped down as "CEO and Senior Partner" of B&H, admitting his own negligence in acquiring the MSW default platform.

50.     B&H and DCG failed to pay the Wittstadts their salary since April 25, 2015 and Hosch has indicated that B&H will never further pay their salary in the future.

---

[3] The Wittstadts were not invited to participate in this conference call but obtained the dial-in number and passcode from another B&H employee.

51.     As a direct and proximate result of the filing of the ABC, the Wittstadts' clients immediately terminated their relationship with B&H, transferred all their existing files to new law firms, and declined to provide the Wittstadts with any new work.

52.     As a direct and proximate result of the Defendants' actions, the Wittstadts have lost a book of business worth millions of dollars.

## COUNT ONE
### *(Negligence and Negligent Misrepresentation against Hosch and B&H)*

53.     Plaintiffs hereby incorporate by reference, as if more fully set forth herein, the allegations contained in paragraphs 1 through 52 above.

54.     B&H through its senior counsel defendant Hosch owed the Wittstadts a duty of care, based upon the special relationship created in the pre-employment negotiations, to act in good faith and with the care of a prudent person under similar circumstances.

55.     At the time B&H through its senior counsel executed the Wittstadts' employment agreements, B&H did not have the financial wherewithal to perform the services and advance the costs necessary to serve the clients that the parties contemplated the Wittstadts would bring to the firm.

56.     At the time B&H through its senior counsel executed the Wittstadts' employment agreements, a reasonable and prudent person should have known that it was not in B&H's best interests because B&H did not have the financial wherewithal to perform the services and advance the costs necessary to serve the clients that the parties contemplated the Wittstadts would bring to the firm.

57.     At the time B&H through its senior counsel executed the Wittstadts' employment agreements, B&H did not have the financial wherewithal to fully fund the compensation and other expenses associated with the Wittstadts' employment under those agreements.

58.     At the time B&H through its senior counsel executed the Wittstadts' employment agreements, a reasonable and prudent person should have known that it was not in B&H's best interests because B&H did not have the financial wherewithal to fully fund the compensation and other expenses associated with the Wittstadts' employment under those agreements.

59.     B&H through its senior counsel Hosch breached its duty of care to the Wittstadts when he recruited the Wittstadts to work for B&H by negligently failing to understand and inform himself about B&H's financial books and records in sufficient detail to understand that B&H could not financially or otherwise support the Wittstadts' book of business.

60.     B&H through its senior counsel defendant Hosch further breached its duty of care to the Wittstadts when he recruited them to work for B&H by negligently representing that B&H had the financial ability to fully fund the Wittstadts' respective employment agreements.

61.     The Wittstadts relied to their detriment on Hosch's negligent misrepresentations by accepting employment with B&H, terminating their employment relationship with MSW, terminating merger negotiations with other law firms, and porting their book of business to B&H.

62.     As a direct and proximate cause of Hosch's negligent representations on behalf of B&H to the Wittstadts relative to the financial and other management conditions of B&H, the Wittstadts have been damaged by the failure of B&H to fund the Wittstadts' employment agreements and the complete loss of their valuable book of business.

63.     At all times during the foregoing negotiations, including in the commission of the foregoing negligent acts and omissions and in the making of the foregoing negligent misrepresentations, Hosch acted as B&H's agent, officer, representative, and proxy.

COUNT TWO
*(Negligence and Negligent Misrepresentation against Bickers and DCG)*

64.     Plaintiffs hereby incorporate by reference, as if more fully set forth herein, the allegations contained in paragraphs 1 through 62 above.

65.     DCG through its president Bickers owed the Wittstadts a duty of care based upon the special relationship created in the pre-employment negotiations to act in good faith and with the care of a prudent person under similar circumstances.

66.     Bickers breached his duty of care to the Wittstadts when he allowed Hosch to recruit and hire the Wittstadts to work for B&H but to be paid by DCG when he knew Hosch was acting in a negligent manner by negligently failing to understand defendant DCG's financial books and records in sufficient detail to understand that defendant B&H should not have entered into the Wittstadts' respective employment agreements and could not financially or otherwise support the Wittstadts' book of business.

67.     Bickers further breached his duty of care to the Wittstadts when he recruited them to work for B&H by negligently representing that B&H had the financial ability to fund the Wittstadts' respective employment agreements and could not financially or otherwise support the Wittstadts' book of business.

68.     The Wittstadts relied to their detriment on Hosch's negligent misrepresentations in accepting employment with defendant B&H, terminating his employment relationship with MSW and porting their book of business to B&H.

69.     Bickers should reasonably have known that Hosch's foregoing representations were false, reckless, or negligently made and that the Wittstadts were reasonably relying upon them.

70.     As a direct and proximate cause of defendant Bicker's negligence, the Wittstadts have been damaged in the failure of B&H and DCG to fund their respective employment agreements and the complete loss of their valuable book of business.

71.     At all times during the foregoing negotiations, including in the commission of the foregoing negligent acts and omissions and in the making of the foregoing negligent misrepresentations, Bickers acted as DCG's agent, officer, representative, and proxy.

72.     At all times during the foregoing negotiations, including in the commission of the foregoing negligent acts and omissions and in the making of the foregoing negligent misrepresentations, DCG and B&H acted in concert, through their respective agents Bickers and Hosch.

**WHEREFORE,** Plaintiffs prays this Honorable Court enter a money judgment for damages as follows:

A.     That the Court enter judgment against Defendants Robert H. Hosch, Jr., Butler & Hosch, P.A., Eddie Bickers, and Default Consulting Group, Inc., jointly and severally, in the amount of Twelve Million Dollars ($12,000,000.00) in favor of Mark H. Wittstadt;

B.     That the Court enter judgment against Defendants Robert H. Hosch, Jr., Butler & Hosch, P.A., Eddie Bickers, and Default Consulting Group, Inc., jointly and severally, in the amount of Twelve Million Dollars ($12,000,000.00) in favor of Gerard Wm. Wittstadt, Jr.; and

C.     And for such other and further relief as the Court deems proper.

Dated:  June 21, 2016                          Respectfully submitted,


                                               **/s/ Adam Hiller**
                                               Adam Hiller (Fed. Bar No. 25301)[4]
                                               HILLER & ARBAN, LLC
                                               1500 North French Street, 2nd Floor
                                               Wilmington, Delaware 19801
                                               (302) 442-7676 telephone
                                               ahiller@hillerarban.com

                                               *Attorneys for Plaintiffs*

---

[4] I hereby certify that I am admitted to practice law in the State of Maryland.

<u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a trial by jury on all triable issues in this Complaint, as may be amended from time to time.

<u>**/s/ Adam Hiller**</u>
Adam Hiller (Fed. Bar No. 25301)
HILLER & ARBAN, LLC
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7676 telephone
ahiller@hillerarban.com

*Attorneys for Plaintiffs*